UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

TORCHLIGHT LOAN SERVICES, LLC, AS
SPECIAL SERVICER TO U.S. BANK
NATIONAL ASSOCIATION, AS TRUSTEE,                11 Civ. 7426
AS SUCCESSOR-IN-INTEREST TO BANK OF
AMERICA, N.A. AS TRUSTEE FOR THE                   OPINION
REGISTERED HOLDERS OF CREDIT SUISSE
FIRST BOSTON MORTGAGE SECURITIES
CORP., COMMERCIAL MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES 2007-C2,

                        Plaintiff,

    -against-

COLUMN FINANCIAL, INC.,

                        Defendant.

------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        SATTERLEE STEPHENS BURKE & BURKE LLP
        230 Park Avenue
        New York, NY  10169
        By:  Christopher R. Belmonte, Esq.
             Pamela A. Bosswick, Esq.

        Attorneys for Defendant

        DUVAL & STACHENFELD LLP
        101 Park Avenue, 11th Floor
        New York, NY  10178
        By:  Allan N. Taffet, Esq.
             Timothy J. Pastore, Esq.
             Joshua Klein, Esq.

**Sweet, D.J.**

Defendant Column Financial, Inc. ("Column" or the "Defendant") has moved pursuant to Rule 12(b)(6) and Rule 9(b), and Rule 17 and Rule 8 of the Federal Rules of Civil Procedure to dismiss all claims in the complaint (the "Complaint") of plaintiff Torchlight Loan Services, LLC ("Torchlight" or the "Plaintiff").

Based upon the conclusions set forth below, the motion is granted in part and denied in part.

## I. **Prior Proceedings & Facts**

Torchlight filed its Complaint on September 7, 2011. The Complaint alleged three causes of action:  breach of contract (Complaint ¶¶ 37-43), fraud (Id. ¶¶ 44-48) and declaratory judgment (Id. ¶¶ 49-51) arising out of a mortgage loan of $9,550,000 entered into March 5, 2007.  The mortgage loan was secured by real property in Elgin, Illinois, which was included in a multi-billion dollar trust with pooled mortgages,

1

ownership of which was sold to investors in the form of certificates.

The allegations in the Complaint include the following description of the transactions and the relationship of the parties.

On March 5, 2007, Column made a mortgage loan in the original principal amount of $9,550,000 to Elgin-O'Hare Commerce Center Properties, LLC (the "Elgin-O'Hare Loan"). (Id. ¶ 1.) The Elgin-O'Hare Loan is secured by real property located at 1200 St. Charles Road, Elgin, Illinois 60120 (the "Property"). (Id. ¶ 2).

In connection with the loan, Column executed a mortgage loan purchase agreement (the "MLPA"), dated May 1, 2007. (Id. ¶ 2). Column sold the Elgin-O'Hare Loan, along with many other commercial mortgage loans, to Credit Suisse First Boston Mortgage Securities Corp. ("CSFB" or the "Depositor). (Id. ¶ 2; Ex. B). CSFB acted as the "depositor," which securitized the loans by securing the rights to cash flows from the loans so that those rights can be sold to investors. (Ex. A).

Simultaneously with the purchase of the mortgage loans from Column, CSFB deposited the pool of loans, including the Elgin-O'Hare Loan, into a multi-billion dollar trust (the "Trust") created by a Pooling and Servicing Agreement, dated May 1, 2007 (the "PSA").  (Complaint ¶ 21; Ex. C).  The Trust represents the pool of mortgages, the beneficial ownership of which has been sold to investors in the form of certificates representing their interest in the pooled mortgages.  The certificates are known as Series 2007 -C2.  (See Ex. C).

The PSA appointed Wells Fargo Bank, N.A. as the original trustee for the Trust.  (Complaint ¶ 6).  Bank of America, N.A. was the successor trustee to Wells Fargo.  The current trustee, U.S. Bank, National Association (the "Trustee"), succeeded Bank of America.  The PSA also appointed Torchlight, formerly known as ING Clarion Partners, LLC, as the Special Servicer, which was responsible for servicing certain mortgage loans that are defined in the PSA as "Specially Serviced Mortgage Loans".  (Id. ¶ 10).

Upon executing the MLPA, Column made certain representations and warranties concerning certain aspects of the

3

loans to CSFB.  (Id. ¶ 2).  The MLPA provides that any material breach of these representations and warranties made by Column is subject to the exclusive remedy provisions of the MLPA.  (Ex. B, at 17).  Section 7 of the MLPA requires, as a pre-condition to commencing any proceedings based on a material breach of the MLPA's representations or warranties, that Column be provided with notice of the alleged breach and an opportunity to cure. (Complaint ¶ 20; Ex. B at 14).  The notice must, among other things, identify the specific representations and warranties in the MLPA allegedly breached so as to allow Column an opportunity to cure.  (Ex. B at 14).  The MLPA also provides that the exclusive and sole remedy for any uncured material breach of the representations and warranties is limited to the repurchase of the particular loan or the replacement of the particular loan with a valid performing loan by Column (the "Mortgage Seller"). (Complaint ¶ 7; Ex. B at 17) ("It is understood and agreed that the obligations of [Column] set forth in this Section 7 to cure, substitute for or repurchase a Mortgage Loan constitute the sole remedies available to [CSFB] and its successors and assigns respecting any Breach or Defect affecting a Mortgage Loan.").
The MLPA is governed and controlled by New York law.  (Ex. B at 20).

4

Under the PSA, the trustee is the successor-in-interest to the rights of CSFB under the MLPA.  (Ex. C. at 94). In other words, the trustee steps into the shoes of CSFB with respect to any representations and warranties made by Column under the MLPA and is also subject to the exclusive remedy provisions of the MLPA.  As such, Section 2.03(f) of the PSA likewise contains an exclusive remedy provision that refers back to and mirrors the one contained in the MLPA.  (Id. at 107-08). ("The related Mortgage Loan Purchase Agreement [i.e., the MLPA] . . . provides the sole remedies available to the Certificate holders, or the Trustee on their behalf, respecting any Breach or Document Defect . . . .").  Like the MLPA, the PSA is governed and controlled by New York law.  Id. at 276.

The Complaint alleges that Column breached the following seven representations and warranties as they relate to the Elgin-O'Hare Loan and that Column is therefore required to repurchase this loan pursuant to the terms of the MLPA and PSA. (Complaint ¶ 18).

- Representation and Warranty (v) – "To [Column's] knowledge . . . the borrower, lessee or operator was in possession of all licenses, permits and authorizations then required for use of the Mortgaged Property which were valid and in full force and effect as of the origination date and

to [Column's] actual knowledge, such licenses, permits and authorizations are still valid and in full force and effect[.]"

- Representation and Warranty (xv) – "Except as set forth in a property inspection report or engineering report prepared in connection with the origination of the Mortgage Loan, as of the later of the date of origination of such Mortgage Loan or the most recent inspection of the related Mortgaged Property by [Column] . . . each related Mortgaged Property is free of any material damage that would affect materially and adversely the use or value of such Mortgaged Property as security for the Mortgage Loan . . . ."

- Representation and Warranty (xvi) – "[Column] has inspected or caused to be inspected each related Mortgaged Property within the past twelve months . . . ."

- Representations and Warranty (xxix) – "All improvements included in the related appraisal are within the boundaries of the related Mortgaged Property . . . ."

- Representation and Warranty (xxxv) – "The Mortgage Loan is directly secured by a Mortgage on a commercial property . . . and, the fair market value of such real property, as evidenced by an appraisal . . . conducted within 12 months of the origination of the Mortgage Loan, was at least equal to 80% of the principal amount of the Mortgage Loan . . . ."

- Representation and Warranty (xl) – "Each Mortgaged Property (a) is located on or adjacent to a dedicated road, or has access to an irrevocable, easement permitting ingress and egress, (b) is served by public utilities and services generally available in the surrounding community or otherwise appropriate for the use in which the Mortgaged Property is currently being utilized . . . ."

6

- Representation and Warranty (li) - "Based upon an opinion of counsel and/or other due diligence . . . the improvements located on or forming part of each Mortgaged Property comply with applicable zoning laws and ordinances, or . . . if any such improvement does not so comply, such non-compliance does not materially and adversely affect the value of the related Mortgaged Property."

(Id. ¶ 18).


The Complaint alleges that Column breached the above representations and warranties because: 1) the appraisal for the Property performed by a third-party appraiser "included four parcels that are not encumbered by the Mortgage, significantly inflating the value stated in the Appraisal" (Id. ¶ 26); 2) the unencumbered "parcels include improvements and elements . . . that are vital to the Mortgaged Property's intended use" (Id. ¶ 28); 3) "[n]o separate appraisal was delivered reflecting the true value of the Mortgaged Property," (Id. ¶ 26); and 4) "the roof suffers from chronic leaks and the building is so structurally unsound that the roof cannot be replaced without causing further damage." (Id. ¶ 29).


By letter, dated November 5, 2010, Torchlight notified Column of its alleged material breaches of the three representations and warranties contained in Sections (v), (xxix)

7

and (li) of the MLPA, and advised Column that under the MLPA, Column had 90 days to repurchase the Elgin-O'Hare Loan.  (Id. ¶ 32; Ex. D).

By letter dated December 20, 2010, Column, through its counsel, responded and informed Torchlight that Torchlight's November 5, 2010 letter failed to give proper notice of a breach of representations and warranties pursuant to the MLPA and the PSA.  (Complaint ¶ 33; Ex. E).  Column therefore informed Torchlight that the November 5, 2010 notice letter was deficient and that the 90 day period to cure or repurchase the Elgin-O'Hare Loan as set forth in the MLPA and PSA had not been triggered.  (Ex. E).

On March 28, 2011, Torchlight, through its counsel, sent a letter to Column that purported to provide "additional formal written notice" that it had breached the representations and warranties contained in Sections (xii), (xv), (xvi), (xx), (xxix), (xxxv), (xl) and (lvii) of the MLPA and advised Column that it had 90 days to repurchase the Elgin-O'Hare Loan. (Complaint ¶ 34; Ex. F).

8

The Complaint alleges that the 90 day period expired on June 28, 2011, and that Column failed to respond to Torchlight's notice and demand set forth in its March 28, 2011 letter.  (Complaint ¶ 36).

On or about September 7, 2011, Torchlight commenced this action upon the filing of its complaint with the Supreme Court of the State of New York, New York County (Index No. 652473/2011) (the "State Court Action").  On October 20, 2011, Column removed the State Court Action from the Supreme Court of the State of New York, New York County to the United States District Court for the Southern District of New York.

The instant motion was heard and marked fully submitted on March 21, 2012.

## II.  **The Rule 12(b)(6) Standard**

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court construes the complaint liberally, accepting all factual allegations as true and drawing all reasonable inferences in the plaintiff's favor.  Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).  The issue "is not

9

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Cohen v. Stevanovich, 772 F. Supp. 2d 416, 423 (S.D.N.Y. 2010). Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. (quoting Twombly, 550 U.S. at 555).

## III. **Discussion**

Standing Has Been Established

Torchlight, as Special Servicer to the Trustee has standing to sue on behalf of the Trustee.  See <u>CWCapital Asset Mgm't, LLC v. Chicago Props., LLC</u>, 610 F.3d 497, 500-01 (7th Cir. 2010)  (holding that a servicer both has standing to bring suit and is the real party in interest entitled to bring suit in its own name).

Column has conceded that Torchlight is "entitled to bring litigation under the PSA" and "on behalf of the Trustee." (Def. Memo at 24-25).  However, Column has contended that the Trustee is the real party in interest citing <u>LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.</u>, 180 F. Supp. 2d 465, 470-71 (S.D.N.Y. 2001).  In <u>LaSalle</u>, however, the trustee was suing on its own behalf and in an attempt to defeat diversity jurisdiction, the defendant argued that the special servicer, and not the trustee, was the real party in interest for the purpose of Rule 17(a).  In denying the motion, the court held that the trustee "is the real party in interest when suing on behalf of that trust."  <u>Id.</u> at 471.

11

In addition, Rule 17(a)(3) provides that a case should not be dismissed because it was not brought by the real party in interest "until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). Then, "after ratification ... the action proceeds as if it had been originally commenced by the real party in interest." Id. To that end, Torchlight has filed herewith an affidavit from the Trustee ratifying Torchlight's suit on its behalf to resolve the issue. See CWCapital, 610 F.3d at 502.

Taken together, Torchlight is the real party in interest and has standing to bring the instant suit.

The Motion To Dismiss The Contract Claim Is Granted In Part
And Denied In Part

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff allege facts sufficient to place the defendant on notice of the nature and scope of the claims against it. Twombly, 550 U.S. at 545 ("Rule 8(a)(2) requires 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.").

12

While Rule 8's notice pleading is liberally construed, courts have dismissed breach of representation and warranty claims, which fail to plead facts sufficient to put a defendant on notice of the nature and scope of the claims.  See e.g., Prime Mover Capital Partners, L.P. v. Elixir Gaming Techs., Inc., 793 F. Supp. 2d 651, 676  (S.D.N.Y. 2011) (dismissing warranty claims because plaintiffs' vague and conclusory allegations that defendants' "course of conduct evidence[d] breach of" two warranties were insufficient to state a claim under Rule 8); Am. Fin. Int'l Group-Asia, L.L.C. v. Bennet, No. 05-8988(GEL), 2007 WL 1732427, at *2-11 (S.D.N.Y. June 14, 2007) (dismissing plaintiffs' claims for failing to comply with Rule 8 notice-pleading standards); VTech Holdings Ltd v. PriceWaterhouseCoopers, LLP, No. 03-1413(LAK), 2003 WL 21756623, at *1-2 (S.D.N.Y. July 30, 2003) (dismissing complaint alleging breach of warranty because plaintiffs' conclusory allegations failed to satisfy requirements of Rule 8); Wells Fargo Bank, N.A. v. LaSalle Bank N.A., No. 11-2884, 2011 WL 4837493, at *3 (N.D. Ill. Oct. 11, 2011) (dismissing claims "for failure to comply with the pleading standards set out in Rule 8" where plaintiff failed to "include any specific allegations" to support conclusory allegations of a breach of warranty.).

13

Column argues that "the Complaint does little more than identify a series of seven representations and warranties in the MLPA and then, in vague and conclusory fashion, asserts that Column was in breach of each." (Def. Memo at 17). In contrast, Torchlight contends that it "has more than met [its] burden, and indeed has alleged facts establishing Column's material breaches of seven express representations and warranties, most of which are apparent from examination of the loan documents that Column's own counsel has cited." (Pl. Opp. at 4-5).

The seven representations alleged to have been breached are, as follows:

Subsection (v) of the MLPA states:

To [Column's] knowledge . . . the borrower, lessee or operator was in possession of all licenses, permits and authorizations then required for use of the Mortgaged Property which were valid and in full force and effect as of the origination date and to, [Column's] actual knowledge, such licenses, permits and authorizations are still valid and in full force and effect[.]

(Complaint ¶ 18(a)).

14

Torchlight contends that because the Appraisal is alleged to have included four unencumbered parcels, and that the Property therefore was not conveyed with the required licenses, permits and authorizations.  (Pl. Opp. at 11).  Torchlight argues that the essential nature of these unencumbered parcels to the Property, including the importance of access to loading docks, renders their inclusion in the Appraisal a violation of Subsection (v).  (Id.).  The Complaint, however, does not allege that any licenses, permits or authorizations were or are required for the use of the Property, nor does it identify specific licenses, permit or authorizations that are missing.

Accordingly, without more, the breach of warranty of the licenses, permits and authorizations is dismissed as inadequately pled.

Subsection (xv) of the MLPA states:

Except as set forth in a property inspection report or engineering report prepared in connection with the origination of the Mortgage Loan, as of the later of the date of origination of such Mortgage Loan or the most recent inspection of the related Mortgaged Property by [Column] . . . each related Mortgaged Property is free of any material damage that would affect materially and adversely the use or value of such Mortgaged Property as security for the Mortgage Loan . . . .

15

(Complaint ¶ 18(b)).

The Complaint alleges that "the Mortgaged Property is in deplorable condition: the roof suffers from chronic leaks, and the building is so structurally unsound that the roof cannot be replaced without causing further damage to the Mortgaged Property." (Id. ¶ 29).

The representations and warranties in Subsection (xv), however, were made as of May 1, 2007, the date of the MLPA. (Id. ¶ 2). Torchlight has not alleged when the leaks began or made any reference to the time frame associated with the alleged damage. Poor conditions of the Property, more than four years after the Elgin-O'Hare Loan was originated, does not establish a breach of any representations and warranties made by Column on May 1, 2007.

Torchlight contends that the Property's roof needed to be replaced at a cost of $1,490,334. (Pl. Opp. at 10). However, the cost of repairs today does not establish the condition of the Property as of May 1, 2007. The Complaint also alleges that an Engineer's Report by AEI Consultants indicates the cost and further states that "[r]outine maintenance has not

16

been performed in recent years."  (Id.).  However, the

Engineer's Report is not referred to in the Complaint and is

dated June 10, 2010.  Torchlight has not alleged any facts

showing the timing of the origins of the alleged damage nor

properly incorporated the Engineer's Report to the Complaint.

Accordingly, any claim based on an alleged breach of

representation and warranty resulting to material damage is

dismissed.

Subsection (xvi) of the MLPA states:

[Column] has inspected or caused to be inspected each
related Mortgaged Property within the past twelve
months....

(Complaint ¶ 18(c)).

The Complaint alleges that "the significant and

obvious damages to the Mortgaged Property indicates that

Column's representation and warranty that it 'has inspected or

caused to be inspected each related Mortgaged Property within

the past twelve months' [preceding the MLPA] amounts to a

material misrepresentation and breach."  (Id. ¶ 30).

17

Torchlight argues that because "the roof needs to be fully replaced" and because "the Engineer's Report [from 2010] indicates that maintenance has not been performed on the Elgin Property for a number of years," (Pl. Opp. at 11), that this established that Column did not inspect the Property prior to the twelve months before the execution of the MLPA.  The condition of the property in 2010, however, has no bearing on whether an inspection was performed years earlier.  In addition, the Complaint does not allege any facts indicating that proper inspections were not performed.

Thus, any claim based on an alleged breach of representation and warrant of inspection is dismissed.

Subsection (xxix) of the MLPA states:

All improvements included in the related appraisal are within the boundaries of the related Mortgaged Property . . . .

(Complaint ¶ 18(d)).

The Complaint alleges that "the Appraisal included four parcels that are not encumbered by the Mortgage, significantly inflating the value stated in the Appraisal." (Id. ¶ 16).

18

Column has contended that it reviewed the Appraisal and "cannot identify any property identified therein as being part of the Mortgaged Property that is not subject to the Mortgage." (Def. Memo at 20). However, the Appraisal indicates that its valuation is based on real property parcels with Property Identification Numbers ("PINs") of 06-25-200-033, 06-25-200-034, 06-25-200-036, 06-25-100-002, and 06-25-400-001 and the Property, which bears PIN 06-25-200-036, comprises only one of these five properties.

Accordingly, Torchlight has stated a valid claim for the breach of representation relating to appraisal improvement because less than all improvements included in the related Appraisal are within the boundaries of the Property.

> Subsection (xxxv) of the MLPA states:
>
> The Mortgage Loan is directly secured by a Mortgage on a commercial property ... and [] the fair market value of such real property, as evidenced by an appraisal . . . conducted within 12 months of the origination of the Mortgage Loan, was at least equal to 80% of the principal amount of the Mortgage Loan . . . .

(Complaint ¶ 18(e)).

19

The Complaint alleges that the Appraisal rendered the representations and warranty relating to fair market value misleading.  The representations and warranties contained in Subsection (xxxv) states that the Elgin-O'Hare Loan is:  (i) secured by a Mortgage on a commercial property, and (ii) that the fair market value of the commercial property is at least equal to 80% of the principal amount of the Elgin-O'Hare. Torchlight has not alleged that the Appraisal did not state a fair market value of the Mortgaged Property equal to at least 80% of the principal amount of the Elgin-O'Hare Loan.

Torchlight argues that the Elgin Property "was later (accurately) appraised at a value of $3,000,000" and cited to a Distribution Statement for the Trust, unmentioned in the Complaint, which states that the Elgin Property was appraised at a value of $3,000,000.  (Smoler Decl., Ex. E).  However, the Distribution Statement expressly states that the $3,000,000 value was determined on "11/10/2010" approximately three and a half years after the representation was made.  Moreover, the Appraisal stated that the fair market value of the Property was $12,600,000, which is in excess of the 80% principal amount of the $9,550,000 Elgin-O'Hare loan.  The mere allegation that the

20

Appraisal inflated the value of the Property is insufficient to plead a claim for breach.

Accordingly, the claim based on an alleged breach of representation and warranty with respect to fair market value is dismissed as inadequately pled.

> Subsection (xl) of the MLPA states:
>
> Each Mortgaged Property (a) is located on or adjacent to a dedicated road, or has access to an irrevocable, easement permitting ingress and egress, (b) is served by public utilities and services generally available in the surrounding community or otherwise appropriate for the use in which the Mortgaged Property is currently being utilized . . . .

(Complaint ¶ 18(f)).

The Complaint alleges that the supposedly unencumbered parcels inaccurately incorporated in the Appraisal "include improvements and elements, such as parking lots, loading docks, and paved access roads, that are vital to the Mortgaged Property's intended use as an industrial warehouse." (Id. ¶ 28).

As set forth above, the Appraisal's valuation is based on four parcels that are unencumbered by the Mortgage and that

"the unencumbered parcels inaccurately incorporated in the Appraisal's representations as to the value of the Mortgaged Property include improvements and elements, such as parking lots, loading docks, and paved access roads, that are vital to the Mortgaged Property's intended use as an industrial warehouse."  (Id.).  The Complaint has adequately alleged both the existence of road access, that they contain improvements vital to the use of the Property and that the road access is contained in the four parcels alleged to have been unencumbered.

Accordingly, Torchlight has adequately alleged Column's breach of the representations and warranties with respect to Subsection (xl).

Subsection (li) of the MLPA states:

Based upon an opinion of counsel and/or other due diligence . . . the improvements located on or forming part of each Mortgaged Property comply with applicable zoning laws and ordinances, or . . . if any such improvement does not so comply, such non-compliance does not materially and adversely affect the value of the related Mortgaged Property.

(Id. ¶ 18(g)).

Other than to recite the foregoing representation and warranty and later quote a portion of it (Id. ¶ 28), the

22

Complaint contains no allegations concerning the failure of the improvements located on the Property to comply with applicable zoning laws and ordinances.  In addition, no particular improvement on the Property and no particular zoning law or ordinance have been alleged in the Complaint.

Thus, the claim based on an alleged breach of representation and warranty with respect to zoning compliance is not adequately pled.

The Fraud Claim Is Dismissed

Under New York law, a re-styling of contract claims does not create an independent claim for fraud and New York courts have dismissed such claims as duplicative.  See LaSalle Bank N.A. v. Citicorp Real Estate, Inc., No. 01-4389(AGS), 2002 WL 31729632, at *12 (S.D.N.Y. Dec. 5, 2002) (dismissing as duplicative fraud claim that "stems directly from its breach of contract claim"); Stewart v. Maitland, 39 A.D.3d 319, 835 N.Y.S.2d 39 (1st Dep't 2007) (holding that the cause of action for fraud was "duplicative of plaintiff's contract claim, inasmuch as it alleged no factual basis for recovery other than defendants' failure to keep promises; no damages were sought

thereunder that would not be recoverable under a contract measure of damages"); J.E. Morgan Knitting Mills, Inc. v. Reeves Bros., Inc., 243 A.D.2d 422, 423, 663 N.Y.S.2d 211 (1st Dep't 1997) (dismissing fraud claim as duplicative of contract cause of action).

Here, Torchlight's allegations with respect to its claim for fraud recite the purported breaches of representations and warranties in the MLPA. (See Complaint ¶ 48) ("As a result of Column's knowingly false and misleading representations and warranties, Torchlight has been damaged . . . .").

In addition, Torchlight did not allege any damages other than those alleged in its breach of contract claim. To be actionable, extra-contractual claims must seek damages distinct from those sought under a claim for breach of contract. See R.H. Damon & Co. v. Softkey Software Prods., 811 F. Supp. 986, 992 (S.D.N.Y. 1993) ("[W]here a fraud claim seeks to enforce no more then [sic] the breached promises and obligations of a contract, rather than additional damages incurred as a result of the breach, the claims are merely redundant and must be dismissed."); Linea Nuova, S.A. v. Slowchowsky, 62 A.D.3d 473, 877 N.Y.S.2d 891, 892 (1st Dep't 2009) (fraud claim held

24

improper where "plaintiff sought no damages that were not also recoverable under its breach of contract theory"); Rockefeller Univ. v. Tishman Constr. Corp. of N.Y., 240 A.D.2d 341, 342, 659 N.Y.S.2d 460, 462 (1st Dep't 1997) (misrepresentation and fraudulent misrepresentation causes fail to state a claim where "the identical contractual benefit of the bargain recovery is sought."). Thus, where a plaintiff fails to allege that it "sustained any damages that would not be recoverable under [its] breach of contract cause of action," its extra-contractual claims must be dismissed. Town House Stock LLC v. Coby Housing Corp., 36 A.D.3d 509, 828 N.Y.S.2d 366, 367 (1st Dep't 2007) (dismissing extra-contractual claims because "there are no damages sought that would not be recoverable under a contract measure of damages").

Torchlight has alleged that, as a result of the alleged breach of representations and warranties in the MLPA, it has or will suffer damages of "not less than $11,690,217.63, plus interest from September 11, 2011." (Complaint ¶ 43). The damages alleged and sought by Torchlight in its fraud claim are no different. (See id. ¶ 48) (seeking damages of "not less than $11,690,217.63, plus interest from September 11, 2011").

25

Torchlight has cited First Bank of the Am. v. Motor Car Fundings, Inc., 690 N.Y.S.2d 17 (1st Dep't 1999), contending that its fraud claim survives because the misrepresentations related to "then present facts." (Pl. Opp. at 14-15). However, it is not sufficient that the alleged misrepresentations are about then-present facts; rather, they also must be "extraneous to the contract and involve a duty separate from or in addition to that imposed by the contract." The Hawthorne Group, LLC v. RRE Ventures, 776 N.Y.S.2d 273, 276 (1st Dep't 2004).

This requirement of a separate duty has been applied in several decisions post-dating First Bank. See Hawthorne, 776 N.Y.S.2d at 276 ("In a fraudulent inducement claim, the alleged misrepresentation should be one of then-present fact, which would be extraneous to the contract and involve a duty separate from or in addition to that imposed by the contract . . . ."); Savasta & Co. v. Interactive Planet Software Motion Inc., 2008 WL 2563485 (Sup. Ct. N.Y. Cnty. June 12, 2008) (distinguishing First Bank and holding that where alleged "misrepresentations of . . . present fact . . . fall exactly within the warranties," they "are not extraneous to the Agreement" and cannot support a fraud claim.). Here, unlike in First Bank, the alleged

misrepresentations are expressly addressed by contractual representations and warranties.

To plead a common law fraud claim under New York law, a plaintiff must allege:  "(1) a material misrepresentation or omission of fact[;] (2) made by defendant with knowledge of its falsity[;] (3) and [sic] intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006).

In addition, Torchlight's fraud claim must meet the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires a party to plead with "particularity the circumstances constituting fraud or mistake." See Fed. R. Civ. P. 9(b); Acito v. IMCERA Grp., Inc., 47 F.3d 47, 51-52 (2d Cir. 1995).  The pleading must:  (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent. Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006).

27

Torchlight has alleged that Column breached the representations and warranties set forth in Sections (v), (xv), (xvi), (xxix), (xxxv), (xl) and (li) of the MLPA because:  the appraisal for the Property performed by a third-party appraiser "inaccurately included four parcels that are not encumbered by the Mortgage, significantly inflating the value stated in the Appraisal" (Complaint ¶ 26); "the unencumbered parcels include improvements and elements . . . that are vital to the Mortgaged Property's intended use" (Id. ¶ 28); "[n]o separate appraisal was delivered reflecting the true value of the Mortgaged Property" (Id. ¶ 26); and "the roof suffers from chronic leaks" (Id. ¶ 29).

However, the Complaint has not identified which four parcels of land are being referred to, does not identify the appraised value of the Property or to what extent the unspecified "true value" of the Property differs from the appraised value and did not provide when the leaking roof occurred.

In addition, under Rule 9(b), in order to establish a "strong inference of scienter," a plaintiff must allege facts showing either: (a) that defendant "had both motive and

28

opportunity to commit fraud," or (b) "strong circumstantial evidence of conscious fraudulent behavior or recklessness." Rozanski v. Fleet Bank, No. 96-7906, 1997 WL 176467, at *2 (2d Cir. 1997).  With respect to motive, "motives that are generally possessed by most corporate directors and officers do not suffice; instead plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud." In re GeoPharma, Inc. Secs. Litig., 411 F. Supp. 2d 434, 441 (S.D.N.Y. 2006) (citing Kalnit v. Eichler, 264 F.3d 131,139 (2d Cir. 2001)).

Moreover, in order to plead scienter on the basis of reckless conduct, a plaintiff must allege conduct that is "at the least . . . highly unreasonable and which represents an extreme departure from the standards of ordinary care ...." Rolf v. Blyth, Eastman Dillon & Co., 570 F.2d 38, 47 (2d Cir. 1978) (quotations omitted).  Where, as here, the plaintiff has failed to establish scienter by way of motive, the "strength of the circumstantial allegations must be correspondingly greater." In re Bristol-Myers Squibb Secs. Litig., 312 F. Supp. 2d 549, 562 (S.D.N.Y. 2004).

Torchlight has not alleged any "circumstantial evidence of conscious fraudulent behavior or recklessness" by Column, nor any facts that demonstrate that Column had the "motive and opportunity to commit fraud."  The heightened pleading requirements necessary to state a cause of action for fraud have not been met, as Torchlight has not pled with particularity and cannot point to any facts giving rise to a strong inference that Column acted with the required state of mind.

The Memorandum in Opposition contains seven citations to the Complaint which quote select excerpts of the contractual representations and warranties upon which Plaintiff is suing but has cited facts and documents that fall outside the pleading.

Further, Torchlight contends that exhibits submitted with the Opposition are "referenced, or otherwise incorporated by reference into, the Complaint."  However, Torchlight submitted nine documents with its Opposition, only one of which, the MLPA, was attached to the Complaint and one other, the PSA, which was sufficiently referenced in the Complaint to be deemed incorporated therein.

30

Torchlight asserts in the Opposition that:  the Elgin Property suffered massive property damage including roof damage that will cost $1.5 million dollars to repair (Pl. Opp. at 3); the Appraisal was inaccurate because Column allegedly refused to provide either a survey or legal description to the appraisers (Id. at 5); the improvements referenced in the Appraisal are not actually within the boundaries of the Elgin Property (Id. at 6-7); and the Elgin Property was later appraised at $3 million. (Id. at 8).  However, parties cannot amend their pleadings by including new factual allegations in an opposition brief to a motion to dismiss.  Olde Monmouth Stock Transfer Co., Inc. v. Depository Trust & Clearing Corp., 485 F. Supp. 2d 387, 393 (S.D.N.Y. 2007) (refusing to consider new factual allegations asserted in plaintiff's opposition brief).

Torchlight has also submitted with its Opposition a series of documents, which are not attached to or referenced in the Complaint.  Declaration of Lawrence Smoler, dated January 12, 2012 ("Smoler Decl."), Exs. A, B, C, D, E, G, H, I.  As a matter of law, a complaint cannot be amended through extrinsic documents submitted in opposition to a motion to dismiss.  See Madu, Edozie & Madu. P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 123 (S.D.N.Y. 2010).

31

Documents extrinsic to the complaint can be considered as part of the pleadings if they are:  (1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint.  DeLuca v. AccessIT Group, Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010).  To incorporate a document by reference, a plaintiff "must make a clear, definite and substantial reference to the documents" in the Complaint. Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003).  Further, for a court to treat an extrinsic document as integral to a complaint, the complaint must rely heavily upon the document's terms and effect.  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

Although Torchlight has stated in the Opposition that "[e]ach exhibit to the [Smoler Decl.] is referenced, or otherwise incorporated by reference into, the Complaint and thus may properly be considered on a motion to dismiss," (Opp'n at 5 n.1), only one of which, MLPA, was attached to the Complaint, (Smoler Decl., Ex. F.)  Five were not referenced in the Complaint (Smoler Decl., Exs. C, D, E, G and I) and two other documents submitted with the Opposition -- the Summary Appraisal Report (the "Appraisal") (Smoler Decl., Ex. A) and the Mortgage,

32

Security Agreement and Fixture Financing Statement (the "Mortgage") (Smoler Decl., Ex. B) are referenced in the Complaint.  (See Complaint at 2, 8, 9 (as to the Appraisal) and Complaint at 1, 2, 3, 8 (as to the Mortgage)).  The Mortgage was not incorporated by reference nor integral to the Complaint and will not be treated as part of the pleadings in deciding this motion to dismiss.  See DeLuca, 695 F. Supp. 2d at 60.


The Claim For Declaratory Judgment Is Dismissed


        The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act."  Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995) (citing Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942)).  In making the determination whether to exercise declaratory jurisdiction, a trial court must consider: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues

33

involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co., 411 F.3d 384,389 (2d Cir. 2005).

A declaratory judgment serves no "useful purpose" when it seeks only to adjudicate an already-existing breach of contract claim. Summit Props. Int'l, LLC v. Ladies Prof'l Golf Assoc., No. 07-10407(LBS), 2010 WL 2382405, at *6 (S.D.N.Y. June 14, 2010) ("Where the declaratory judgment is duplicative of the breach of contract claim" neither purpose considered by the Second Circuit is served); Apple Records v. Capitol Records, 137 A.D.2d 50, 54 (1st Dep't 1988) ("A cause of action for a declaratory judgment is unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action, such as breach of contract.")

Torchlight has sought a declaration that "Column is required to repurchase the loan at a cash price equal to the outstanding principal balance of the loan as of the date of purchase, including all accrued and unpaid interest on the loan, any unreimbursed servicing advances (as defined in the Loan Documents), and any fees, costs and expenses incurred by

34

Torchlight as Special Servicer."  (Complaint ¶ 51.)  Such a declaration would serve no "useful purpose," because the requested declaration is identical to the relief sought in the breach of contract claim.  (Compare Id. ¶ 41 with Id. ¶ 51).

Accordingly, the declaratory judgment claim is dismissed as duplicative.

## IV.  Conclusion

Based upon the conclusions set forth above, the motion of the Defendant to dismiss the fraud claim and the declaratory judgment claim is granted, and its motion to dismiss the contract claim is granted in part and denied in part.

The Plaintiff is granted leave to replead within 20 days.

It is so ordered.

New York, NY
July 2 2, 2012

_____
ROBERT W. SWEET
U.S.D.J.

35